UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KAREN PITTMAN                                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 3:21-CV-819-DPJ-FKB

J.H.O.C., INC.                                                                   DEFENDANT

ORDER

This employment-discrimination suit is before the Court on Defendant J.H.O.C., Inc.'s

motion for summary judgment [37].  Plaintiff Karen Pittman has responded in opposition.  For

the reasons explained, Defendant's motion is granted as to the Title VII claims but denied as to

the state-law claims.

I.        Facts and Procedural History

Karen Pittman worked as a warehouse supervisor for J.H.O.C., a Georgia trucking

company doing business in Mississippi.  Her tenure lasted just five months.  Pittman claims that

about one month in, on January 29, 2021, she was "sexually harassed by a male co-worker" and

complained about it.  Compl. [1] at 3.  In her deposition, Pittman described the incident, stating

that the man "grabbed [her] private part."  Pl.'s Dep. [39-2] at 32; *see also id.* at 33 (indicating

that he grabbed her groin).[1]  J.H.O.C. immediately suspended the co-worker and then fired him

three days after Pittman complained.  *Id.* at 35–39.

According to Pittman, things got worse after that.  She says her supervisors immediately

began retaliating by allowing other employees to "speak rudely towards" her and by

"demean[ing] her authority" "when she tried to discipline the employees."  Compl. [1] at 3.

Then, in May 2021, J.H.O.C. fired Pittman after she took a long lunch break outside the building

_____

[1] Pittman refers to the male co-worker as "Reid."  Pl.'s Mem. [39] at 2.

without telling the general manager or operations manager.  *Id.*  According to Pittman, she

"followed correct protocol" by alerting another supervisor to "watch her line," but she does not

dispute the facts on which the termination was based.  *Id.*

Aggrieved, Pittman filed a charge of sex discrimination with the Equal Employment

Opportunity Commission (EEOC), in which she described the alleged sexual assault and claimed

retaliation.  EEOC Charge [7-1].  She followed that by filing this suit.  J.H.O.C. quickly moved

to dismiss, and the Court dismissed Pittman's unexhausted claims of race and disability

discrimination, leaving Title VII claims for sexual harassment and retaliation plus state-law

claims for negligent hiring, retention, and supervision.  *See* Order [11].  J.H.O.C. now seeks

summary judgment on those remaining claims; Pittman opposes the motion.  The Court has

federal-question jurisdiction over the Title VII claims and appears to have diversity jurisdiction

over the state-law claims (if not, then supplemental jurisdiction exists).

II.     Summary-Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when

evidence reveals no genuine dispute about any material fact and the moving party is entitled to

judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case[] and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion[] and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 477 U.S. at 323.

The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts

2

showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

III.     Analysis

In her Complaint, Pittman pleads claims for sex-based discrimination and retaliation under Title VII.  Compl. [1] at 4–5.  She also advances state-law claims for negligent hiring, retention, and supervision.  *Id.* at 7.  The Court will address these claims separately.

A.       Sex Discrimination

Title VII prohibits an employer from discriminating against an employee based on sex. 42 U.S.C. § 2000e-2(a)(1).  There are different types of sex-discrimination claims under Title VII, and there is some confusion over the type Pittman pursues.  A sex-discrimination claim for disparate treatment will exist when an employer treats an employee less favorably than others based on his or her sex. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022).  Sexual harassment will also violate Title VII when there exists either quid-pro-quo

3

harassment or a hostile work environment.  *Newbury v. City of Windcrest*, 991 F.3d 672, 675 (5th Cir. 2021).  Though Pittman's Complaint *seems* to allege sexual harassment and never mentions disparate treatment, her summary-judgment response focuses on the disparate-treatment analysis.  This Order will start there and then examine sexual harassment.

1.      Disparate Treatment

In her summary-judgment response, Pittman recites the elements for a prima facie disparate-treatment claim.  *See* Pl.'s Resp. [39] at 7–8.  As she notes, an essential element of a disparate-treatment claim is proof that she "was treated less favorably than other similarly situated employees outside the protected group."  *Id.* at 8 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).  But neither her Complaint nor her EEOC charge offers any such assertions.  *See* Compl. [1]; EEOC Charge [7-1].

Her summary-judgment response is the same; she never identifies a comparator who allegedly received more favorable treatment under "nearly identical circumstances."  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  And she cites no record evidence of disparate treatment.  *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that party asserting genuine factual dispute must cite "particular parts of materials in the record").  The Court therefore concludes that Pittman has not met her burden to establish a prima facie case.  *See McCoy*, 492 F.3d at 556.[2]

2.      Sexual Harassment

J.H.O.C. says Pittman pleaded neither a quid pro quo nor a sex-based hostile-work-environment claim in her Complaint, so "there is no sexual harassment claim pending in this litigation."  Def.'s Mem. [38] at 10.  Pittman never disputes this assertion in her response, and

---

[2] J.H.O.C. did not argue that the claim was unexhausted.

her opening paragraph excludes this claim from the list of those that should survive summary

judgment.  *See* Pl.'s Resp. [39] at 1.  So maybe she never intended to plead it this claim.

    If she did, then she has abandoned it.  In an earlier order, the Court inferred a sex-based

hostile-work-environment claim, Order [11] at 5, so J.H.O.C. alternatively moved for summary

judgment on the merits, *see* Def.'s Mem. [38] at 10–12.  According to J.H.O.C., summary

judgment is required because Pittman failed to establish the fourth and fifth essential elements

for a sex-based hostile-work-environment claim involving a co-worker's harassment.  *Id.* [38] at

10.

    Those elements require proof of conduct "that affected a 'term, condition, or privilege of

employment'" about which "the Defendant knew or should have known and failed to take

prompt, remedial action."  *Id.* (quoting *Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 651 (5th

Cir. 2012)).  J.H.O.C. says—based on Fifth Circuit authority—that the single incident of alleged

harassment was insufficiently severe or pervasive to alter the terms and conditions of

employment.  *Id.* at 11.  J.H.O.C. further notes that it took prompt remedial action after Pittman

complained by immediately suspending the offending co-worker and firing him three days later.

*Id.* at 12.  Pittman suffered no additional sexual harassment after these steps.  Pl.'s Dep. [39-2] at

32.

    Pittman never directly addresses these arguments in her response and offers no legal

analysis supporting a hostile-work-environment claim.  As noted above, her only analysis for a

sex-discrimination claim under Title VII is her discussion of disparate treatment.  *See* Pl.'s Mem.

[39] at 8.  She never specifically references the sexual-harassment claim, never discusses its

elements, and never directly responds to J.H.O.C.'s arguments and legal authority.

When responding to a summary-judgment motion, the non-movant must generally "identify specific evidence in the record and articulate the manner in which that evidence supports [her] claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). And "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Criner v. Tex.-N.M. Power Co.*, 470 F. App'x 364, 368 (5th Cir. 2012) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)); *see also Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021) (stating that claims are abandoned when party fails to substantively brief them (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."))). Pittman's decision may have been tactical, but, on this record, the sex-based hostile-work-environment claim was abandoned. Summary judgment is appropriate.[3]

B.      Retaliation

Title VII "forbids employer actions" that discriminate against an employee because she "has 'opposed' a practice that Title IV forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe*

---

[3] Pittman does say two things in her brief that could touch J.H.O.C.'s arguments. First, she asserts that when she reported the harassment, J.H.O.C. "did nothing at first." Pl.'s Mem. [39] at 8 (citing Pl.'s Dep. [39-2] at 30–32). If she meant for that to address J.H.O.C.'s prompt-remedial-action argument, her own testimony refutes her assertion. As she testified, J.H.O.C. immediately suspended Reid and then fired him within three days of her complaint. *See* Pl.'s Dep. [39-2] at 35–39. Unsubstantiated assertions will not create a triable issue. *TIG Ins. Co.*, 276 F.3d at 759. Second, when Pittman addresses her state-law claims, she says J.H.O.C. knew the co-worker had done this before—though she provides no facts about those other incidents. Pl.'s Mem. [39] at 12. Whether that might also address the prompt-remedial-action argument under Title VII could be fact dependent and legally complex. Given the circumstances, the Court will not attempt sua sponte analysis. Pittman cited this evidence to support her state-law claims and never linked it to a triable issue under Title VII. *See Duffie*, 600 F.3d at 371. It would be risky to explore an issue with no input from the parties on a claim Pittman may not even be pursuing.

*Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  To establish a claim

of retaliation, Pittman must show:  (1) she participated in an activity protected by Title VII; (2)

her employer took an adverse action against her; and (3) a causal connection exists between the

protected activity and the adverse employment action.  *Saketkoo*, 31 F.4th at 998.

Pittman meets the first prong; she experienced and reported an episode of sexual

harassment.  She also satisfies the second because her termination from employment was an

adverse employment action.  The third prong is trickier.  The only thing Pittman says about

causation is that "soon after" she reported the incident, management allowed employees to speak

rudely to her.  Pl.'s Mem. [39] at 10.[4]

Pittman's temporal-proximity argument raises underdeveloped issues the Court will

mention but not explore.  A "very close" proximity between protected activity and *an adverse

action* can establish causation at the prima facie stage.  *Clark Cnty. Sch. Dist. v. Breeden*, 532

U.S. 268, 273 (2001) (emphasis added) (citations omitted).  The gap between Pittman's

complaint and termination was four months—an interval that has generated some inconsistent

language in the Fifth Circuit.  *Compare Evans v. City of Houston.*, 246 F.3d 344, 354 (5th Cir.

2001) (citing with approval cases finding four-month gap sufficiently close) (citation omitted),

*with Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 885 (5th Cir. 2020) (noting that gap in

*Evans* was five days and therefore four-month comment was "not binding, or even persuasive,

precedent that two and one-half months is sufficient"), and *Flanner v. Chase Inv. Servs. Corp.*,

---

[4] Pittman never claims that this rude behavior constitutes an adverse employment action—her
analysis of the adverse-employment-action element relies exclusively on the termination.  *See*
Pl.'s Mem. [39] at 10 ("[A]n adverse employment action occurred when Ms. Pittman was
terminated.").  Nor has she responded to J.H.O.C.'s meritorious argument that these other
incidents are not themselves actionable.

600 F. App'x 914, 922 (5th Cir. 2015) (addressing *Evans* and holding four-month gap insufficient).

That issue aside, Pittman says the rude behavior began right after she complained, but she never addresses whether close proximity between protected activity and non-actionable conduct can create a prima facie case. Nor have the parties examined whether the alleged rude behavior constitutes other evidence of a causal connection so that the gap between protected conduct and termination does not "stand[] alone." *Besser*, 834 F. App'x at 885. There is no need to answer those questions today because Pittman's claim would still fail at the final stage of the burden-shifting framework. The Court therefore moves to step two.

"If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide a legitimate, non-discriminatory reason for the adverse employment action." *Saketkoo*, 31 F.4th at 1000 (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)) (internal quotation marks omitted). J.H.O.C. easily meets that test. Pittman reported the sexual harassment by Reid to then-General Manager Leon James on January 31, 2021. But James was replaced on May 3 by General Manager Cale Choat, who made the decision to fire Pittman. Greco Aff. [37-7]. Choat explained that Pittman had left the building for an extended lunch without notifying him or the operations manager, as required. Choat Statement [37-5].

Because J.H.O.C. offered a legitimate non-retaliatory reason for its decision, Pittman has "the burden to prove that the proffered reason is pretextual." *Saketkoo*, 31 F.4th at 1000 (quoting *Brown*, 969 F.3d at 577). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Brown v. Wal-Mart*

*Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (quoting *Haire v.*

*Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)).

"The ultimate determination in an unlawful retaliation case is whether the conduct

protected by Title VII was a 'but for' cause of the adverse employment decision." *Long v.*

*Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996); *see Saketkoo*, 31 F.4th at 1001–02.  And

"to survive a motion for summary judgment, the plaintiff must show a 'conflict in substantial

evidence' on this issue." *Saketkoo*, 31 F.4th at 1002 (quoting *Brown*, 969 F.3d at 577).  When

considering pretext, the Court may "consider 'numerous factors, including the strength of the

plaintiff's prima facie case, the probative value of the proof that the employer's explanation is

false, and any other evidence that supports the employer's case and that properly may be

considered.'"  *Id.* (quoting *Brown*, 969 F.3d at 577).

As noted, Pittman argues that things changed quickly after she complained.  But unlike

proximity proof at the prima facie stage, the Fifth Circuit has "affirmatively reject[ed] the notion

that temporal proximity standing alone can be sufficient proof of but for causation" once the

employer offers a legitimate non-retaliatory reason for the decision.  *Strong v. Univ. Healthcare*

*Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Pittman's proximity argument is not enough.[5]

Pittman also argues that she "followed correct protocol" when she left because she told a

fellow supervisor (Keith Champ) to "watch her line."  Pl.'s Rep. [39] at 11; *see also* Pl.'s Dep.

[39-2] at 5–51.  Choat, the decisionmaker who had been on the job for less than a month,

disagreed about the correct protocol.  Choat Statement [37-5].  He also stated that telling Champ

---

[5] It is also worth noting that the rude-conduct allegation is a mixed bag because Pittman also said
people supported her decision to report Reid, and there were other personality conflicts during
this period.  Of course, the Court views the evidence in the light most favorable to Pittman.

to watch the line was improper because Champ did not know Pittman was leaving the building, only that she was stepping away.  *Id.*

Pittman concedes the conduct on which the decision was based—that she took an extended break outside the building without notifying the general manager or operations manager.  Title VII does not "protect against unfair business decisions, only against decisions motivated by unlawful animus." *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981). And "a disagreement about how to apply company policy [does] not show pretext." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459–60 (5th Cir. 2019) (citing *Campbell v. Zayo Grp., L.L.C.*, 656 F. App'x 711, 715 (5th Cir. 2016)).  Also, an "assertion of innocence alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating" employment. *Jackson v. Cal W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

The only other thing Pittman says is that she had never received a warning before her complaint but was fired after it.  When asked in her deposition why she believed her termination was retaliatory, Pittman answered:  "What else can it be?  I've been getting—the GM managers have been, you know, telling me how great I've been doing as a supervisor.  Then all of a sudden this incident happened, everything went downhill, and I don't know why."  Pl.'s Dep. [39-2] at 70.

Though there may be a fact dispute whether Pittman was reprimanded before her sexual-harassment complaint, not everything was going great.  Shortly after she arrived at J.H.O.C., Pittman "got into it" with a temp.  Pl.'s Dep. [39-2] at 60.  J.H.O.C. says it issued a written reprimand and produced a document that stated:  "Covered, but refused to sign."  Notice [37-4]

10

at 1.  Pittman denies receiving the reprimand, but she acknowledges the incident and has offered

no evidence indicating that J.H.O.C. viewed the pre-complaint incident as benign.  Pl.'s Dep.

[39-2] at 60.

In any event, what's missing is evidence linking her protected activity and her

termination.  There is no proof of disparate treatment, no evidence suggesting that Choat's

reason for the termination decision is unworthy of credence, and no other evidence that Choat

would not have terminated her employment but for this incident.  Stating, "What else can it be?"

is not enough.  Pl.'s Dep. [39-2] at 70.  "[S]ubjective belief of discrimination, however genuine,"

cannot defeat summary judgment when the evidence supports the employer's proffered reason

and not pretext.  *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (internal

citations omitted).  Summary judgment on the retaliation claim is appropriate.

C.      Negligence

Lastly, Pittman alleges J.H.O.C. engaged in negligent hiring, retention, and supervision.

As she puts it, J.H.O.C.

> has violated its duty as Plaintiff's employer to provide a safe workplace, to take
> reasonable steps to determine the fitness of Plaintiff's co-workers and supervisors
> and to reasonably supervise Plaintiff's co-workers and supervisors by, inter alia,
> failing and refusing to investigate and/or take appropriate disciplinary or other
> action in response to Plaintiff's harassment, intimidation, and retaliation.

Compl. [1] at 7.

"In Mississippi, 'an employer will be liable for negligent hiring or retention of his

employee when an employee injures a third party if the employer knew or should have known of

the employee's incompetence or unfitness.'"  *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207,

217 (Miss. Ct. App. 2012) (quoting *Doe v. Pontotoc Cnty. Sch. Dist.*, 957 So. 2d 410, 416–17

(Miss. Ct. App. 2007)).  Likewise, to prevail on a negligent-supervision claim, "specific

evidence of an employer's actual or constructive knowledge of its employee's dangerous or violent tendencies is necessary." *Holmes v. Campbell Props., Inc.*, 47 So. 3d 721, 729 (Miss. Ct. App. 2010).

To support these claims, Pittman alleges that J.H.O.C. "did nothing at first" and only addressed her complaint of harassment "[a]fter days of persistence and complaining." Pl.'s Mem. [39] at 12 (citing Pl.'s Dep. [39-2] at 30–32). As mentioned previously, Pittman's deposition refutes this assertion. Pl.'s Dep. [39-2] at 36–39. But even if factually true, Pittman's delay theory has a causation problem. Because she was never harassed after complaining, any alleged delay caused no injuries.

Pittman makes a more serious allegation when she says General Manager Leon James "was aware of past sexual harassment done by Reid." Pl.'s Resp. [39] at 12 (citing Pl.'s Dep. [39-2] at 37). Viewing the facts in the light most favorable to Pittman, Pittman claims that Reid grabbed her groin, Pl.'s Dep. [39-2] at 33, that she told James what he did, *id.* at 37, and that James responded by saying Reid "had been doing this a lot, and it's time for him to stop, and somebody need it make him stop," *id.* (unaltered).

J.H.O.C. says this is not enough for three reasons. First, it argues that Pittman never fully identified the accused employee. Def.'s Reply [40] at 3. But that conflicts with J.H.O.C.'s next argument—that it took prompt remedial action against that same accused. *Id.* As for those actions, the negligence claim is different from the Title VII claim. The negligence theory is that the assault would not have occurred had J.H.O.C. already removed Reid. J.H.O.C. cites no authority suggesting that its post-injury remedial measures preclude negligence liability. Finally, J.H.O.C. writes off the testimony as Pittman's own "conclusory assertions." *Id.* But Pittman was under oath and testified to what the general manager told her. Such comments could be

12

admissions, and J.H.O.C. has not disputed their admissibility.  The state-law claims will move forward.

III.    Conclusion

The Court has considered all arguments; those not specifically addressed would not have changed the result.  For the reasons stated, Defendant's motion for summary judgment is granted as to the Title VII claims but denied as to the state-law claims.

The parties are instructed to contact the chambers of United States Magistrate Judge F. Keith Ball to request a settlement conference.[6]  Once the settlement conference is scheduled, the Court will set a pretrial-conference date and trial setting.

**SO ORDERED AND ADJUDGED** this the 31st day of August, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Prior settlement conferences were cancelled pending a ruling on the instant motion.